Val KILLIAN, Plaintiff and Respondent,

v.

O.B. OBERHANSLY, Defendant and Appellant.

No. 19562.

Supreme Court of Utah.

Sept. 24, 1987.

Clark B. Allred, Gayle F. McKeachnie, Vernal, for defendant and appellant.

George E. Mangan, Machelle Fitzgerald, Roosevelt, for plaintiff and respondent.

STEWART, Associate Chief Justice:

This is an appeal from an accounting in which the district court ruled that the plaintiff and the defendant had incurred a net operating loss of $108,441 from a dairy partnership they had entered into and that the defendant was liable to the plaintiff for one-half that amount, or $54,220.50, less any payment the defendant made on a judgment in favor of Brookfield Seed Co. for a debt owed by the partnership. On this appeal, the defendant contends that the trial court erred in ruling that the plaintiff and the defendant had not entered into an accord and satisfaction with respect to the dissolution of the partnership and in entering judgment for the plaintiff, Val Killian, in an amount equal to one-half the partnership losses. We affirm.

The issues raised are factual. In November, 1980, Killian and Oberhansly entered into a partnership agreement to operate a dairy farm. A formalized handwritten partnership agreement was executed February 4, 1981, pursuant to which each party agreed to share profits and losses equally. Killian contributed the use of seventy-two milk cows which he had leased from a commercial leasing company, a dairy barn, and eighty acres of land. Oberhansly contributed $9,100 in cash and leased 124 cows from an agricultural leasing company for use by the partnership. Each party provided security for the lease of the cows. Oberhansly's backhoe, manure spreader, and Dodge truck were also used by the partnership, but Oberhansly claims they were not contributed to the partnership.

Killian operated the dairy and was to receive a salary of $2,000 per month. However, he received no salary during the life of the partnership. All the equipment used by the dairy, with the exception of the backhoe, the spreader, and the pickup truck, belonged to Killian or was purchased or leased after the partnership commenced business operations. Killian advanced the partnership $85,000 of his own funds for the operation of the partnership, and Ober-

hansly refused to contribute any funds beyond the initial investment and rarely visited the dairy or offered assistance. Prior to the spring of 1982, the partnership began to experience financial problems.

The alleged accord and satisfaction grew out of a conversation held shortly before April 30, 1982, between Killian and Oberhansly in front of Killian's house. At that time, it appears, the partnership had only two outstanding debts, and Killian proposed that he pay one, a $20,000 grain bill, and that Oberhansly pay the other, a $5,700 hay bill. Oberhansly refused. At trial, Oberhansly alleged that Killian had agreed to "assume all other bills," and Killian denied the allegation. Instead of accepting Killian's proposal, Oberhansly stated that he would contact Mark Duncan, to whom the hay bill was owed, to negotiate payment. Neither Oberhansly nor Killian paid the bills. Bartlett Farms, to whom the grain bill was owed, thereafter sued Killian and Oberhansly and obtained a judgment. Oberhansly had paid $8,000 on that debt at the time of trial, and Bartlett Farms executed on that judgment for the remainder.

On April 30, 1982, Killian and Oberhansly decided to dissolve the partnership and divide the leased cows between them. Killian assumed liability for thirty of the leased cows, and Oberhansly assumed liability for ninety-one cows. New lease agreements reflecting the division were executed in late summer, 1982, with the leasing company.

Subsequent to the April 30, 1982, agreement, Killian had an accountant conduct an audit of the partnership books. The audit revealed a partnership loss of over $108,-000. Killian asked Oberhansly to contribute to the partnership losses and Oberhansly refused. Killian thereafter filed suit for one-half the losses. Contrary to Oberhansly's contention, the trial court found as a matter of fact that the parties had not entered an accord and satisfaction.

Oberhansly now contends that the trial court erred in (1) failing to find the elements of an accord and satisfaction, (2) dividing the losses of the partnership, and (3) finding that the partnership continued through the summer of 1982. Oberhansly also claims that the trial court should have ordered the return of Oberhansly's backhoe and manure spreader, which Oberhansly claims Killian has unlawfully retained.

■ Oberhansly's appeal is frivolous. We will not reverse the trial court's findings of partnership losses unless they are clearly erroneous. Utah R.Civ.P. 52(a). The best that can be said for his claim of an accord and satisfaction is that the evidence, when stretched beyond the breaking point in favor of Oberhansly, is disputed, but there is clearly substantial evidence to support the trial court's finding that there was no accord and satisfaction. Even assuming, contrary to Oberhansly's own testimony, that Oberhansly accepted Killian's offer concerning the payment of the hay and grain bills and that the hay and grain bills were paid according to the terms of the offer, we would not be able to find an accord and satisfaction because the supposed agreement did not purport to be an accord and satisfaction of all liabilities between the parties under the partnership agreement. Nowhere in the record, including Oberhansly's testimony, is there any indication that the agreement to pay the partnership debts to third parties was intended to settle the accounts between the partners.

■ Oberhansly also argues that the trial court erred in awarding Killian a judgment for one-half the $108,441 partnership losses found by Killian's accountant. Having reviewed the record, we think it clear that the trial court did not err. The only evidence of partnership losses introduced at trial was adduced by Killian's accountant. Oberhansly also argues that the trial court did not consider certain partnership property received by Killian that should have been split between the partners or credited against the losses incurred.[1]

1. In the statement of facts in his brief, Oberhansly complains that $6,900 initially contributed by him to the partnership was never returned to him. This is technically correct. However,

Those contentions were not raised in the trial court and may not now be raised here.

Oberhansly further asserts that the trial court erred in ruling that the partnership continued into the summer of 1982. Again, the argument was not raised below; in any event, the partnership accounting relied upon by the trial court only covered the period up to April 30, 1982.

Finally, Oberhansly claims that the trial court erred in not ordering that the backhoe and manure spreader, which he claims are his personal property, be returned to him. Again, Oberhansly made no request for such relief in the trial court. Furthermore, although it has now been sold at a sheriff's sale, Killian stated both at trial and in his brief on appeal that Oberhansly was free to take the equipment. We see no need to consider the issue further.

Affirmed. Costs to the respondent.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.

the record, while not absolutely clear on this point, seems to indicate that Oberhansly received a credit in this amount against his liability for the leased cows he received from the partnership. In any event, the point is not raised as an issue by the defendant in his brief on this appeal.